```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

JAMES HAROLD HOLMES,               )
                                   )
                Plaintiff,         )
                                   )
v.                                 )    Case No.: [Insert Case Number]
                                   )
BENJAMIN KIRK RUDY,                )    FIRST AMENDED COMPLAINT
JOHN DAVID WELDON,                 )
OFFICER BRAD HALTERMANN,           )    JURY TRIAL DEMANDED
SUPERVISOR JOSH HAZEL, and         )
JUDGE BRANDON FOX, and             )
JANE DOE (Mailroom/Admin),         )
                                   )
                Defendants.        )
_____)
```

Plaintiff James Harold Holmes, proceeding *pro se*, for his First Amended Complaint against the above-named Defendants, respectfully states and alleges as follows:

# I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights secured to the Plaintiff by the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.
2. Venue is proper in the United States District Court for the Western District of Missouri, Southern Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

# II. PARTIES

1. Plaintiff James Harold Holmes is a citizen of the United States residing at 809 N. Campbell Avenue, Springfield, Missouri 65802.
2. Defendant Benjamin Kirk Rudy was at all times relevant an outreach pastor affiliated with Westside Baptist Church in Waynesville, Missouri. He is sued in his personal capacity.
3. Defendant John David Weldon was at all times relevant a pastor affiliated with Westside Baptist Church in the State of Georgia. He is sued in his personal capacity.
4. Defendant Brad Haltermann was at all times relevant an officer employed by a local law enforcement agency. He is sued in his personal capacity.
5. Defendant Josh Hazel was at all times relevant a supervisor employed by a local law enforcement agency. He is sued in his personal capacity.
6. Defendant Brandon Fox is a Circuit Court Judge for the 25th Judicial Circuit of Missouri (Pulaski County). He is named herein in his personal capacity for actions taken in the

clear absence of all jurisdiction.

7. Defendant Jane Doe was at all times relevant an administrative official, mailroom supervisor, and/or correctional officer employed at the Pulaski County Jail. She is named herein in her personal capacity for actions taken under color of state law. Her true name is currently unknown to Plaintiff but will be substituted once obtained through discovery.

## III. STATEMENT OF FACTS

### A. Background, Protected Speech, and Case Origin

1. Plaintiff James Harold Holmes is an ordained minister in good standing with his church. Guided by his sincere religious beliefs and practices, including the tenets of Matthew 19:21, Plaintiff maintains a life of minimal material wealth, rendering him an indigent prisoner upon his confinement.
2. Prior to his arrest, Plaintiff engaged in protected public speech and whistleblower activities under the First Amendment by criticizing the operational and financial practices of church-affiliated homeless outreach programs in Missouri, submitting formal complaints to the Internal Revenue Service (IRS) concerning their tax-exempt status.
3. Following these whistleblowing activities, Defendants Benjamin Kirk Rudy and John David Weldon targeted Plaintiff by delivering unverified, unauthenticated digital printouts of a Facebook page to local law enforcement, falsely identifying Plaintiff as the author of criminal threats against a church.
4. In truth, a plain and reasonable reading of the text on the digital printouts relied upon by law enforcement revealed that the communication was entirely a religious prayer request made to a church. The document was completely devoid of any actionable, immediate, or illegal threats.
5. Defendants Officer Brad Haltermann and Supervisor Josh Hazel blindly relied on these private, retaliatory representations and deliberately ignored the facial content of the document, which explicitly detailed a protected religious prayer request. Without conducting an independent forensic analysis or basic textual review, Plaintiff was subsequently arrested and subjected to prolonged pretrial incarceration under Pulaski County Case No. 25\text{PU-CR00585-01}.

### B. Unconstitutional Booking Interrogation and Deprivation of Materials

1. On the night of his intake, Corporal Avey (Badge 395) utilized unauthorized text and email communications sent directly from the prosecutor's office to interrogate Plaintiff on matters outside standard intake forms without administering *Miranda* warnings.
2. Following booking, Plaintiff was placed in housing pods where jail administration systematically stripped him of the basic tools necessary to communicate with the courts or prepare a defense. Jail officials routinely ignored the constitutional and basic hygiene needs of indigent prisoners by refusing to provide writing paper, envelopes, stamps, or pencils.
3. When Plaintiff requested that basic writing and mailing supplies be integrated into standard indigent inmate packages, jail officials refused. Furthermore, when Plaintiff attempted to utilize the electronic media tablets to research his case, communicate, or address jail staff, the equipment was non-functional, failing to hold an electrical charge even after being left on facility chargers overnight.

## C. Systemic Mail Tampering, Deceptive Paperwork, and Access Barriers by Jane Doe

1. At all times relevant, Defendant Jane Doe implemented a punitive policy and practice of actively suppressing Plaintiff's legal communications by permanently withholding and denying standard legal-sized envelopes to Plaintiff for his sensitive, confidential legal mail.
2. Instead, Defendant Jane Doe forced Plaintiff to write highly sensitive legal matters—including direct reports of official misconduct—on open, unsealed postcards, intentionally exposing his confidential defense strategy to jail staff and creating a severe chilling effect on his access to courts.
3. Furthermore, the automated digital kiosk and mail logs from the Pulaski County Jail establish a pattern of systemic, punitive mail delays executed by Defendant Jane Doe. The electronic timestamps conclusively demonstrate that incoming legal mail and documentation regularly arrived at the facility and was logged into the system days before it was physically dispensed or released to the Plaintiff. Defendant Jane Doe intentionally held incoming mail to disrupt Plaintiff's ability to meet strict court deadlines.
4. In addition to mail subversion, Defendant Jane Doe routinely utilized highly coercive and deceptive administrative tactics to compromise Plaintiff's legal security. Specifically, Defendant Jane Doe forced indigent pretrial detainees, including the Plaintiff, to sign official jail documentation and forms that were completely blank or otherwise not filled out.
5. Once these uncompleted, signed documents were collected, Defendant Jane Doe retained them in a physical file cabinet within the jail's administrative office. This practice allowed jail administration to unilaterally alter records, falsely impute consent, or manufacture fraudulent compliance with jail regulations retroactively, creating an ongoing, severe threat to Plaintiff's procedural protections.

## D. Systemic Interference with Counsel and Delayed Court Access

1. Due to the facility's restrictive communication policies, Plaintiff suffered a total structural breakdown of his Sixth Amendment right to counsel. Plaintiff's court-appointed public defender visited him a mere two times across a span of nine months of strict confinement.
2. Desperate to contact his attorney, Plaintiff purchased commercial calling cards, but the jail's internal telephone configurations prevented the calls from connecting. Left with no alternative, Plaintiff submitted formal grievances directly to Lieutenant Marcus Robison begging for administrative clearance simply to place a telephone call to his non-responsive defense counsel.
3. When Plaintiff attempted to bypass his non-responsive counsel by requesting standard, blank legal packets from the courthouse—specifically a Petition for Expungement of Arrest Records, a Writ of Habeas Corpus, and *In Forma Pauperis* financial forms—jail administration delayed his access by forcing these requests through an indirect, weeks-long administrative routing loop via the circuit clerk.
4. Furthermore, jail administration actively suppressed Plaintiff's internal administrative record-keeping. When Plaintiff filed formal requests demanding physical copies of all grievances he had compiled during his confinement, Lieutenant Robison left the requests sitting in a perpetual, unfulfilled "Pending" state, preventing Plaintiff from establishing a verified paper trail of the facility's constitutional violations.
5. In addition to administrative suppression, jail staff utilized punitive housing measures to

break Plaintiff's resolve. On November 26, 2025, Corporal Rodriguez (Badge 394) placed Plaintiff into a severe 3-day disciplinary lockdown inside cell C18, citing a minor administrative infraction under Detainee Handbook Section 2.8 for an allegedly covered air vent. This lockdown was executed despite a pervasive facility-wide pattern of inmates adjusting vents due to poor climate controls and inadequate ventilation inside C Pod.

## E. Medical Indifference and Hazardous Emergency Extraction

1. Concurrently, Plaintiff faced severe, systemic medical indifference regarding his clinically diagnosed chronic heart failure. Because jail medical staff refused to secure Plaintiff's historical, diagnostic medical charts from his treating physicians in Colorado, the facility's medical staff prescribed daily cardiac medications based entirely on administrative guesswork rather than objective clinical records.
2. When Plaintiff submitted direct grievances demanding a complete copy of his local jail medical records to evaluate what drugs he was being given, his requests were rerouted and delayed.
3. On July 14, 2025, Plaintiff submitted urgent notifications stating that his heart failure was flaring up, causing severe physical degradation. Jail staff delayed appropriate cardiac evaluation, substituted heart care with a completely irrelevant assessment for a neck injury, and refused to fulfill post-hospital discharge orders for basic recovery items like an extra head-elevating pillow and clean bedding.
4. The medical indifference at the Pulaski County Jail was further compounded by a systemic, structural failure to maintain necessary medical transport and safety equipment for severely ill inmates. On or about July 17, 2025, when jail staff determined that emergency hospital transport was required for Plaintiff's cardiac event, jail custody personnel forced the physically degraded Plaintiff to manually walk down a flight of stairs.
5. Jail administration failed to provide a wheelchair or appropriate mobile medical chair at cell side, requiring Plaintiff to navigate the staircase entirely on foot before eventually being placed into a wheelchair at the bottom of the stairs. This forced physical exertion during an active cardiac flare-up was a direct consequence of the facility's failure to maintain proper medical transport devices, creating a substantial and unjustifiable risk of immediate cardiac arrest and permanent injury.

## F. Total Breakdown of Judicature and Proceedings In Absentia

1. While Plaintiff sat isolated in B Dorm with non-functional tablets and a non-communicative attorney, Defendant Judge Brandon Fox routinely convened, conducted, and ruled upon critical stages of Case No. 25\text{PU-CR00585-01} in Plaintiff's forced physical absence, knowing jail transport staff had failed to bring him to the courthouse.
2. Trapped in his cell, Plaintiff filed detailed *pro se* instruments onto the docket—including a Motion to Quash, a Writ of Mandamus, a Writ of Habeas Corpus, and a formal Bond Request Hearing Form.
3. In his *pro se* bond petitions, Plaintiff explicitly notified the court that his detention violated the federal Bail Reform Act and the constitutional standards established by the United States Supreme Court in *United States v. Salerno*. Plaintiff noted that he required immediate access to his records and emails to prove he had reported his accusers to the IRS for tax fraud, thereby demonstrating that the criminal charges against him were a direct fabrication born of religious and financial retaliation.

4. Defendant Judge Fox systematically refused to rule on or acknowledge any of Plaintiff's *pro se* constitutional filings, maintaining a strict procedural bar against hybrid representation. By holding critical hearings *in absentia* while simultaneously ignoring Plaintiff's direct notices that his counsel had abandoned him, Defendant Judge Fox created a state of absolute legal paralysis that prolonged Plaintiff's unconstitutional pretrial detention.

# IV. CAUSES OF ACTION

## COUNT I: FOURTEENTH AMENDMENT – PUNITIVE CONDITIONS OF CONFINEMENT, DECEPTIVE PRACTICES, AND MEDICAL INDIFFERENCE

**(42 U.S.C. § 1983 Against Detaining Authorities, Staff, and Defendant JANE DOE)** 37. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. 38. Pretrial detainees have a right under the Fourteenth Amendment to be free from conditions of confinement that amount to punishment, including deliberate indifference to serious medical needs, deceptive administrative records manipulation, and the intentional denial of basic safety and legal defense materials. 39. The practice enforced by Defendant Jane Doe of compelling indigent pretrial detainees to execute blank, uncompleted documents to be stored in an administrative file cabinet subverts baseline procedural checks. This policy deprives inmates of their due process protections, strips them of the ability to verify records affecting their confinement, and serves as an arbitrary mechanism of institutional deception and control. 40. Defendants further violated Plaintiff's Fourteenth Amendment rights by maintaining a facility structurally devoid of basic medical transport and safety equipment, choosing to force a severely ill cardiac patient to walk down stairs during an active medical emergency rather than employing cell-side mobile extraction protocols. 41. Concurrently, the facility's failure to obtain Plaintiff's diagnostic medical files, resulting in the administration of cardiac medications based on dangerous administrative guesswork, constitutes deliberate indifference to a life-threatening condition. 42. As a direct and proximate result of these punitive and deceptive conditions, Plaintiff suffered severe physical degradation, prolonged isolation, exposure to record falsification, and an inability to protect his legal interests.

## COUNT II: FIRST AND FOURTEENTH AMENDMENTS – MAIL INTERFERENCE AND DEPRIVATION OF COURT ACCESS

**(42 U.S.C. § 1983 Against Defendant JANE DOE)** 43. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. 44. Pretrial detainees possess a protected First Amendment right to receive and send mail without unjustified governmental interference, and a Fourteenth Amendment Due Process right to unhindered access to the courts and confidential legal counsel. 45. By permanently withholding legal envelopes, forcing highly sensitive legal matters onto open, unsealed postcards, and intentionally holding incoming mail for days after its recorded electronic timestamp arrival, Defendant Jane Doe placed arbitrary, punitive, and unconstitutional barriers between Plaintiff and the justice system. 46. The actions of Defendant Jane Doe served no legitimate penological security interest but were executed to spy on Plaintiff's privileged legal matters, disrupt his ability to meet strict court deadlines, and punish him for exercising his rights. 47. As a direct and proximate result of Defendant Jane Doe's actions, Plaintiff suffered severe constitutional injury, an inability to timely

respond to legal matters, and a total breach of his attorney-client privacy.

## COUNT III: FIRST AMENDMENT RETALIATION

**(42 U.S.C. § 1983 Against All Defendants)** 48. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. 49. Plaintiff's public criticism of church outreach financial practices and his subsequent whistleblower reports to the IRS constitute speech on matters of public concern protected by the First Amendment. 50. Private Defendants Rudy and Weldon, acting in joint concert with state law enforcement, took adverse action against Plaintiff by delivering unverified printouts to the police to initiate his arrest, maliciously characterizing a protected religious prayer request as a criminal threat. 51. Defendants Officer Haltermann and Supervisor Hazel took adverse action by executing an arrest and causing a ten-month detention without independently authenticating the source of the digital evidence or reviewing its explicit textual content. 52. A substantial and motivating factor in the Defendants' actions was explicit hostility toward Plaintiff's protected public speech, his religious expression via prayer requests, and his prior IRS reporting activities. 53. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered a severe deprivation of liberty and the complete collapse of his professional ministry.

## COUNT IV: FOURTH AMENDMENT UNLAWFUL SEIZURE / FALSE ARREST

**(42 U.S.C. § 1983 Against Defendants Haltermann and Hazel)** 54. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. 55. The Fourth Amendment requires that any arrest and subsequent deprivation of liberty be supported by true, independently verified probable cause. 56. Defendants Haltermann and Hazel lacked probable cause to arrest and detain Plaintiff because a basic, reasonable review of the digital printouts relied upon reveals that the text was a protected religious prayer request, which no reasonable officer could objectively construe as a credible, immediate criminal threat. 57. Defendants knowingly or with reckless disregard for the truth relied on facially insufficient, unverified evidence and ignored the clear non-threatening nature of the document to secure Plaintiff's arrest and subsequent ten-month incarceration under Case No. 25\text{PU-CR00585-01}.

## COUNT V: DEPRIVATION OF CIVIL RIGHTS UNDER CLEAR ABSENCE OF JURISDICTION

**(42 U.S.C. § 1983 Against Defendant Judge Brandon Fox Personally)** 58. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. 59. A criminal court's jurisdiction over a defendant's physical liberty is fundamentally conditioned upon the preservation of baseline constitutional guarantees, including the right to be physically present at all critical stages and the right to meaningful representation. 60. Defendant Judge Brandon Fox repeatedly conducted critical criminal proceedings, including bond hearings, while knowing Plaintiff was physically barred from attending due to systemic transport failures by custody personnel. 61. By intentionally proceeding over a felony prosecution *in absentia*, and by systematically refusing to recognize or rule upon Plaintiff's direct *pro se* petitions highlighting a complete structural abandonment by counsel and glaring *Salerno* violations, Defendant Judge Fox operated in the clear absence of all lawful jurisdiction. 62. Because Defendant Judge Fox acted completely outside the scope of lawful jurisdiction by conducting a criminal prosecution *in*

*absentia* during a total breakdown of counsel, he is stripped of absolute judicial immunity.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James Harold Holmes respectfully requests that this Court enter judgment in his favor and against all named Defendants, granting the following relief:
- **A.** A declaratory judgment that the acts and omissions of the Defendants described herein violated Plaintiff's rights secured by the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution;
- **B.** An award of compensatory damages against all Defendants, jointly and severally, for loss of liberty, severe physical injury caused by lack of medical records and transport machinery, emotional distress, exposure to fraudulent administrative records, and the destruction of his professional ministry operations;
- **C.** An award of punitive damages against all Defendants in their personal capacities for their malicious, reckless, and intentionally injurious conduct;
- **D.** An award of reasonable costs and disbursements incurred in this action; and
- **E.** Such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff James Harold Holmes hereby demands a trial by jury on all counts and issues so triable.
Dated: June 15, 2026
Respectfully submitted,
**James Harold Holmes**, *Plaintiff Pro Se* 809 N. Campbell Avenue Springfield, Missouri 65802
Phone: 573-337-7322